ANDREW B. GROSSMAN (SB# 211546)
andrewgrossman@paulhastings.com
COURTNEY L. TURCO (SB# 294591)
courtneyturco@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
25th Floor
Los Angeles, California 90071
Telephone:  (213) 683-6250
Facsimile:  (213) 996-3250

LINTON JOAQUIN (SB# 73547)
joaquin@nilc.org
KAREN C. TUMLIN (SB# 234691)
tumlin@nilc.org
MELISSA S. KEANEY (SB# 265306)
keaney@nilc.org
National Immigration Law Center
3435 Wilshire Blvd., Suite 2850
Los Angeles, California 90010
Telephone:  (213) 639-3900
Facsimile:  (213) 639-3911

Attorneys for Plaintiff
NATIONAL IMMIGRATION LAW CENTER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL IMMIGRATION LAW CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, a component of the Department of Homeland Security,<br><br>Defendants. | CASE NO.  2:14-cv-09632<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Freedom of Information Act, 5 U.S.C. § 552 |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

JURISDICTION AND VENUE ......................................................................... 2

PARTIES ............................................................................................................. 3

BACKGROUND ................................................................................................. 4

STATEMENT OF FACTS ................................................................................. 9

     A.    NILC's FOIA Request ........................................................... 9

     B.    Request for Expedited Processing ...................................... 10

     C.    Request for Waiver of Fees ................................................. 12

     D.    Request for Fee Reduction .................................................. 13

     E.    Defendants' Responses to NILC's Requests ..................... 14

     F.    Defendant ICE's Response to NILC's FOIA Request ...... 14

     G.    Defendant DHS's Response to NILC's FOIA Request..... 16

PRAYER FOR RELIEF ................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

5 U.S.C.
§ 552(a)(3) ............................................................................... 17
§ 552(a)(3)(A) ......................................................................... 17
§ 552(a)(3)(C) .......................................................................... 17
§ 552(a)(4)(ii)(II) ..................................................................... 19
§ 552(a)(4)(A)(ii)(II) .......................................................... 13, 14
§ 552(a)(4)(A)(iii) .......................................................... 12, 18, 19
§ 552(a)(4)(B) .......................................................................... 2, 3
§ 552(A)(4)(E) ......................................................................... 19
§ 552(a)(6) ............................................................................... 17
§ 552(a)(6)(A) ................................................................. 14, 16, 17
§ 552(a)(6)(A)(ii) .................................................................... 16
§ 552(a)(6)(B) .......................................................................... 14
§ 552(a)(6)(B)(i) ...................................................................... 15
§ 552(a)(6)(C)(i) ...................................................................... 17
§ 552(a)(6)(E) .......................................................................... 18
§ 552(a)(6)(E)(ii) ..................................................................... 14
§ 552(a)(6)(E)(iii) ...................................................................... 1
§ 552(a)(6)(E)(v)(II) ........................................................... 10, 18
§ 552(f)(1) .................................................................................. 4

28 U.S.C.
§ 1331 ........................................................................................ 1
§ 1391(e)(1)(C) ........................................................................... 3
§ 2412 ...................................................................................... 19

**Other Authorities**

6 C.F.R. § 5.11(k) ........................................................................ 13

Albert Sabat, "Highest Fatality Rates from Unlicensed Drivers in
    California," ABC News (Jan. 17, 2013),
    http://abcnews.go.com/ABC_Univision/News/unlicensed-drivers-
    higher-rates-fatal-crashes-california/print?id=18239481 ...................... 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Amanda Peterson Beadle, "How Allowing Undocumented Immigrants to Obtain Driver's Licenses Can Save Lives," Think Progress (Jan. 16, 2013), http://thinkprogress.org/justice/2013/01/16/1455661/how-allowing-undocumented-immigrants-to-obtain-drivers-licenses-can-save-lives................................................................................................... 5

Aura Bogado "ICE's Latest Stop for Deportations: The DMV," The Nation (Feb. 15, 2013) .......................................................... 11

Brad Heath, "ICE Says It Never Acted on Plans to Mine Driver Records," USA Today (Feb. 15. 2013), http://www.usatoday.com/story/news/nation/2013/02/15/immigration-deportation-tactics/1923931 ................................................... 8

Brad Heath, "Immigration Tactics Aimed at Boosting Deportations," USA Today (Feb. 17, 2013) ................................................... 11

California AB 60 at Section 1, enacted in 2013, *available at*: http://legiscan.com/CA/text/AB60/2013 .................................. 4

"ERO Atlanta Field Office: Prospective Criminal Apprehension Initiatives," dated April 18, 2012, *available at* http://www.documentcloud.org/documents/603861-ice-documents.html ........................................................................ 7

Esther Yu-Hsi Lee, "Oregon Voters Deny Driver's Licenses to Undocumented Immigrants," Think Progress (Nov. 5, 2014), http://thinkprogress.org/immigration/2014/11/05/3589326/oregon-voters-drivers-licenses-no-go ............................................. 1

"Estimation of Fatal Crash Rates for Suspended/Revoked and Unlicensed Drivers in California," State of California, Dep't of Motor Vehicles, *available at* http://apps.dmv.ca.gov/about/profile/rd/r_d_report/Section_6/S6-238.pdf................................................................................... 5

# TABLE OF AUTHORITIES
### (continued)

Page(s)

Gilberto Soriano Mendoza, "States Offering Driver's Licenses to Immigrants," National Conference of State Legislatures (April 2014), *available at* http://ncsl.org/documents/immig/DL_Enacted_TableApril2014.pdf ................ 12

http://nilc.org/driverlicenses.html ............................................................... 3

Ian Lovett, "California Driver's License Program Hits an Unexpected Hurdle," The New York Times (Mar. 4, 2014), http://www.nytimes.com/2014/03/05/us/california-drivers-license-program-hits-an-unexpected-snag.html ............................................... 6

John Fritze "Raid spurs fear of driver's licenses among immigrants," The Baltimore Sun (Sept. 20, 2014), http://articles.baltimoresun.com/2014-09-20/news/bs-md-immigrant-licenses-20140920_1_immigrants-mva-advocacy-group ................ 8

Juan Perez, Jr., "License application leads to immigration bust," Chicago Tribune (Sept. 8, 2014), http://www.chicagotribune.com/news/ct-drivers-license-deportation-met-20140908-story.html ............................................... 7

Karen Tumlin *et al.*, *A Broken System: Confidential Reports Reveal Failure in U.S. Immigration Detention Centers* (July 2009) ............................ 14

Kari D'Ottavio, "Deferred Action for Childhood Arrivals: Why Granting Driver's Licenses to DACA Beneficiaries Makes Constitutional and Political Sense," 72 Md. L. Rev. 931 (2013)....................... 12

Maria Pabon Lopez, "More Than a License to Drive: State Restrictions on the Use of Driver's Licenses by Non Citizens," 19 S. Ill. U. L.J. 91 (2005) ...................................................................... 6

Maria Pabon Lopez, "More Than a License to Drive: State Restrictions on the Use of Driver's Licenses by Noncitizens," 19 S. Ill. U. L.J. 91 (2005) ...................................................................... 12

Mike Debonis, "Illegal Immigrants Can Soon Apply for D.C. Driver's Licenses," The Washington Post (Apr. 18, 2014)............................... 12

1
2

# TABLE OF AUTHORITIES
(continued)

Page(s)

3
4

NILC, *Immigrant Families Will Not Be Penalized for Affordable Care
Act Glitches* (March 27, 2014) .................................................................. 14

5
6

NILC, *Release of Customs and Border Protections Report a Good
First Step Towards Transparency* (May 30, 2014) .................................... 14

7
8

Richard Winton, Hector Becerra & Kate Mather, "Driver's Licenses
for Undocumented Immigrants Stir Debate," Los Angeles Times
(Sept. 13, 2013) ........................................................................................ 12

9
10
11

Tanya Broder *et al.*, *Inclusive Policies Advance Dramatically in the
States: Immigrants' Access to Driver's Licenses, Higher Education,
Workers' Rights, and Community Policing* (October 2013) ...................... 14

12
13

Tung Sing Wong, "Branded to Drive: Obstacle Preemption of North
Carolina Driver's Licenses for DACA Grantees," 37 Hamline L.
Rev. 81 (2014) .......................................................................................... 12

14
15
16

Vallerye Masoquera, "Driving While Undocumented: Chapter 524
Allows Undocumented Immigrants to Apply for California Driver's
Licenses," 45 McGeorge L. Rev. 617 (2014) .......................................... 12

17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") to conduct a proper search for and disclose documents and records related to information sharing between these government agencies and state driver's license agencies for immigration enforcement purposes.

2.      The documents have been requested by the National Immigration Law Center ("NILC"), a nonprofit, nonpartisan organization dedicated to the defense and advancement of the rights of low-income immigrants and their families. Policymakers, community organizers, legal advocates, and the commercial media recognize NILC as a highly credible source of information and analysis on a wide range of issues that affect the lives of immigrants in the United States and rely upon information and reports developed and disseminated by NILC on the real-life impact of immigration-related laws and policies.

3.      More than five months have passed since NILC made its initial FOIA requests, accompanied by a request for expedited processing, to DHS and ICE seeking information regarding a reported plan or program by ICE to use state driver's license records as an investigative tool to target immigrants for enforcement action.  DHS and ICE have rejected NILC's request for expedited processing, and have failed to conduct a diligent search for or, in the case of DHS, to respond substantively to the requests for records.

4.      The materials sought by NILC's FOIA requests are urgently needed to better inform the public (or dispel unfounded concerns) about the direct and collateral impacts of federal immigration enforcement initiatives that could deter immigrants from taking advantage of state programs to become qualified and

1  licensed drivers, thereby potentially frustrating the public safety aims of those state

2  initiatives.

3       5.      Effective January 2, 2015, California will begin issuing driver's

4  licenses to residents who cannot show proof of authorized presence.  In so doing,

5  California joins nine other states, plus the District of Columbia and Puerto Rico,

6  that have enacted laws making individuals eligible for driver's licenses or driving

7  privileges regardless of immigration status.[1]  The legislatures of these states have

8  determined that issuing licenses regardless of immigration status is essential to

9  protecting public safety.  In California alone, about 1.4 million residents are

10  expected to apply for driver's licenses pursuant to the new law.

11       6.      NILC's request for information comes at a time when news reports

12  across the country have raised concern among undocumented immigrants who are

13  considering applying for licenses that the state driving authority to which they

14  provide proof of residency may share this information with ICE for immigration

15  enforcement purposes.  ICE and DHS have refused to reveal the contours of their

16  use of state driver's license records for immigration enforcement, and have refused

17  to substantively and adequately respond to NILC's urgent request for information.

18                          **JURISDICTION AND VENUE**

19       7.      This Court has subject matter jurisdiction over this action and personal

20  jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii).

21  Because this action arises under the federal laws of the United States, this Court

22  also has jurisdiction pursuant to 28 U.S.C. § 1331.

23  _____

24  [1] These states are: Colorado, Connecticut, Illinois, Maryland, New Mexico,
    Nevada, Utah, Vermont, and Washington.  Declaration of Plaintiff In Support of
25  Motion for Preliminary Injunction ("Keaney Decl.") at ¶ 20(n), Exhibit X, Esther
    Yu-Hsi Lee, "Oregon Voters Deny Driver's Licenses to Undocumented
26  Immigrants," Think Progress (Nov. 5, 2014),
    http://thinkprogress.org/immigration/2014/11/05/3589326/oregon-voters-drivers-
27  licenses-no-go
28

8.      Venue properly rests with this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) because Plaintiff resides or has its principal place of business within this District.

9.      Plaintiff has exhausted any and all administrative remedies in connection with its FOIA requests, as detailed below.

**PARTIES**

10.      Plaintiff NILC is a nonprofit, nonpartisan national legal advocacy organization whose mission is exclusively dedicated to defending and advancing the rights of low-income immigrants and their families.[2]

11.      Through its policy analysis, advocacy, education, and litigation efforts, NILC serves as an important resource to a broad range of immigrant advocacy groups, community organizations, legal service organizations, and the general public.  As a primary part of its work, NILC disseminates information to the public through its website (http://nilc.org), electronic news letters, news alerts, issue briefs, trainings, and other educational and informational programs.[3]

12.      NILC has done extensive work for many years in preparing and disseminating research, fact sheets, policy analyses, toolkits, comments on regulations, and talking points on state driver's license issues and their interplay with federal immigration enforcement.  In fact, NILC devotes a significant portion of its website to state driver's license issues and their relationship with immigration enforcement.  See http://nilc.org/driverlicenses.html.

13.      It is through FOIA requests and other public resources that NILC is able to analyze, synthesize, and disseminate information to a broad public audience. It does so at no cost to the public.

---

[2] *See* Keaney Decl. at ¶ 3.
[3] *See id.* at ¶¶ 3-4.

14.     Defendant DHS is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). DHS is responsible for administering and enforcing federal immigration laws. Upon information and belief, DHS has possession and control over records requested by NILC.

15.     Defendant ICE is a component of DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1).  ICE is the largest investigative arm of DHS and, among other duties, operates, oversees, and executes the removal of noncitizens. Upon information and belief, ICE has possession and control over records requested by NILC.

## BACKGROUND

16.     In 2013, California passed Assembly Bill 60 ("AB 60"), providing California residents access to driver's licenses without regard to immigration status. This new law goes into effect on January 2, 2015.[4]

17.     In passing this law, California joined nine states, and the District of Columbia and Puerto Rico, that have passed similar legislation in recent years.[5] State lawmakers have recognized that the inability of undocumented residents to obtain driver's licenses has created a large population of untested, unlicensed, and uninsured drivers on the roads, which has severely impacted public safety.[6]

18.     These new driver's license laws recognize that undocumented residents need to drive to meet their daily needs, and therefore are likely to continue

---

[4] *See* Declaration of California Assemblymember Luis Alejo in Support of Plaintiff's Motion for Preliminary Injunction ("Alejo Decl.") at ¶ 4.
[5] *See* Keaney Decl. at ¶ 18.
[6] *See* Alejo Decl. at ¶¶ 4-5; *see also* Keaney Decl. at ¶ 20(b), Exhibit L, Text of California AB 60 at Section 1, enacted in 2013, *available at*: http://legiscan.com/CA/text/AB60/2013 ("It is our responsibility to ensure that all California drivers are properly trained, tested, and insured in order to make our roads safer.").

to operate vehicles even if not allowed to obtain driver's licenses and insurance.  In order to serve public safety interests, these laws help ensure that drivers on the road are properly trained and have passed a driving test.[7]  These laws also increase drivers' access to car insurance (as driver's licenses are typically required to obtain insurance), and they reduce the costs of covering accidents involving uninsured motorists, potentially reducing insurance rates for everyone.[8]

19.    For example, according to a report by California's Department of Motor Vehicles ("DMV") (relied upon by the California legislature in enacting AB 60), unlicensed drivers are nearly three times more likely to cause a fatal crash.[9] From 1998 to 2007, the number of fatal crashes involving drivers without valid licenses increased by 17 percent nationally.  In California, such fatal crashes increased by 49 percent.[10]

20.    Such new driver's license laws are expected to have a particularly positive impact in states, such as California, where there are potentially 1.4 million drivers who are expected to apply for driver's licenses.[11]

---

[7] *See* Alejo Decl. at ¶ 5; *see also* Declaration of San Francisco District Attorney George Gascón in Support of Plaintiff's Motion for Preliminary Injunction ("Gascón Decl.") at ¶ 8.

[8] In California, for example, insurance companies paid out $634 million in claims for collisions related to uninsured motorists in 2009.  *See* Keaney Decl., at ¶ 20(m), Exhibit W, Amanda Peterson Beadle, "How Allowing Undocumented Immigrants to Obtain Driver's Licenses Can Save Lives," Think Progress (Jan. 16, 2013), http://thinkprogress.org/justice/2013/01/16/1455661/how-allowing-undocumented-immigrants-to-obtain-drivers-licenses-can-save-lives.

[9] *See id.* at ¶ 20(e), Exhibit O at p. 17, "Estimation of Fatal Crash Rates for Suspended/Revoked and Unlicensed Drivers in California," State of California, Dep't of Motor Vehicles, *available at* http://apps.dmv.ca.gov/about/profile/rd/r_d_report/Section_6/S6-238.pdf.

[10] *See id.* at ¶ 20(f), Exhibit P, Albert Sabat, "Highest Fatality Rates from Unlicensed Drivers in California," ABC News (Jan. 17, 2013), http://abcnews.go.com/ABC_Univision/News/unlicensed-drivers-higher-rates-fatal-crashes-california/print?id=18239481.

[11] *See id.* at ¶ 20(b), Exhibit L at Section 1; *see also* Alejo Decl. at ¶ 5.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

21.     Other positive effects of these new driver's license laws include: (i) benefits to the U.S. economy through a more mobile labor force,[12] (ii) providing greater safety and accountability by giving police the ability to use the license to identify the individuals they are assisting,[13] (iii) giving drivers greater incentive to stay at the scene of an accident, and (iv) reducing the burden on courts and jails of drivers who are there solely for driving without a license or insurance.[14]

22.     There is, however, fear and deep mistrust among those eligible for driver's licenses under these new state laws that their personal information provided to state DMVs will be shared with and used by DHS and ICE for immigration enforcement purposes.[15]  Such a fear may dramatically reduce the number of applicants who would otherwise have the right to apply for a driver's license and frustrate the public safety purposes of these laws.

23.     Across the country, numerous immigrants have expressed their fear that the DMV may coordinate with ICE and share personal information from their applications to deport them.[16]  As a Nevada Department of Motor Vehicles spokesman said regarding the new Nevada law, "There is a high level of distrust. . . . People were convinced that no matter what we were saying, once we

---

[12] *See* Keaney Decl. at ¶ 20(u), Exhibit EE, Maria Pabon Lopez, "More Than a License to Drive: State Restrictions on the Use of Driver's Licenses by Non Citizens," 19 S. Ill. U. L.J. 91 (2005).

[13] *See* Gascón Decl. at ¶ 9.

[14] *See* Keaney Decl. at ¶ 20(n), Exhibit X; *see also* Gascón Decl. at ¶ 9.

[15] *See* Declaration of Coalition for Humane Immigrant Rights of Los Angeles (CHIRLA) Director of Policy & Advocacy Joseph Villela in Support of Plaintiff's Motion for Preliminary Injunction ("Villela Decl.") at ¶ 5; Declaration of CASA Director of Health and Human Services George Escobar in Support of Plaintiff's Motion for Preliminary Injunction ("Escobar Decl.") at ¶ 7.

[16] *See* Keaney Decl. at ¶ 20(c), Exhibit M, Ian Lovett, "California Driver's License Program Hits an Unexpected Hurdle," The New York Times (Mar. 4, 2014), http://www.nytimes.com/2014/03/05/us/california-drivers-license-program-hits-an-unexpected-snag.html.

had them in our system, we would pass their information on and someone would be there to round them up."[17]

24.     Heightening such fears were emails obtained through a FOIA request by the American Civil Liberties Union of North Carolina uncovering a proposed plan by the ICE Atlanta Office to boost the number of undocumented immigrant deportations using information obtained from state DMV databases.  To meet its aggressive quotas for deportations, the ICE Atlanta office proposed a plan for ICE "HQ" to reach out to each state's DMV or Driver's Services Bureau to obtain records of denied driver's license applications and temporary licenses issued to foreign-born applicants.[18]  According to these emails, ICE "HQ…directed [the Atlanta field office] to implement this plan and to REALLOCATE ALL AVAILABLE RESOURCES…to attaining this year's criminal-alien removal target."[19]

25.     NILC's FOIA requests to DHS and ICE seek information relating to these agencies' access to and use of information from state DMV databases for immigration enforcement purposes.  These requests were denied.

26.     Without disclosure of the requested information, apprehension among immigrants will continue to grow.  Recent news articles highlight the importance of the information sought in NILC's FOIA request to the community.  For example, in Illinois, a man was put into deportation proceedings after the information he provided to the state in order to obtain the state's new temporary visitors driver's license was shared with ICE and was used to locate and arrest him.[20]  Similarly, in

---

[17] *Id*. at p. 3.

[18] *See id*. at ¶ 20(j), Exhibit T, Internal ICE document, "ERO Atlanta Field Office: Prospective Criminal Apprehension Initiatives," dated April 18, 2012, *available at* http://www.documentcloud.org/documents/603861-ice-documents.html.

[19] *Id*., Internal ICE email dated May 4, 2012 (emphasis in original).

[20] *See id*. at ¶ 20(k), Exhibit U, Juan Perez, Jr., "License application leads to immigration bust," Chicago Tribune (Sept. 8, 2014),

Maryland, ICE used the state's DMV database to locate specific individuals who had applied under that state's new driver's license law.[21]

27.     Although ICE has denied implementing a plan to troll state DMV databases for immigration enforcement purposes,[22] such denials do little to ease immigrants' fears in the face of news reports to the contrary.

28.     There is insufficient public information about the scope of ICE's access to or use of state DMV records.  Without adequate information to educate the public, there will be continued fear in the immigrant community over the risks of applying for a driver's license in each of the ten states that have passed laws expanding access to driver's licenses for undocumented residents, thereby frustrating the public safety objectives these laws were intended to address, and there will be a continued inability for organizations, like NILC, who work on driver's license issues to adequately inform clients on the risks of applying for a driver's license.[23]  Indeed, because of the lack of information, some advocacy groups have had to warn potential applicants that they should assume that ICE may use driver's license data for immigration enforcement purposes.[24]

29.     The confusion and lack of information is particularly problematic in California, which has the highest number of undocumented immigrants, and whose new driver's license law becomes effective on January 2, 2015.

---

http://www.chicagotribune.com/news/ct-drivers-license-deportation-met-20140908-story.html.

[21] *See id*. at ¶ 20(l), Exhibit V, John Fritze "Raid spurs fear of driver's licenses among immigrants," The Baltimore Sun (Sept. 20, 2014), http://articles.baltimoresun.com/2014-09-20/news/bs-md-immigrant-licenses-20140920_1_immigrants-mva-advocacy-group.

[22] *See id*. at ¶ 20(i), Exhibit S, Brad Heath, "ICE Says It Never Acted on Plans to Mine Driver Records," USA Today (Feb. 15. 2013), http://www.usatoday.com/story/news/nation/2013/02/15/immigration-deportation-tactics/1923931.

[23] *See* Villela Decl. at ¶ 7; Escobar Decl. at ¶ 10.

[24] *See* Escobar Decl. at ¶ 8.

LEGAL_US_E # 113033876.6

# STATEMENT OF FACTS

## A.    **NILC's FOIA Request**

30.    On April 24, 2014, NILC submitted identical FOIA requests to Defendants DHS and ICE seeking records related to information sharing between Defendants and state driver's license agencies for immigration enforcement purposes.  See Keaney Decl. at ¶ 6, Exhibit A.

31.    The request sought disclosure of records "prepared, received, transmitted, collected and/or maintained by DHS and ICE relating or referring to information sharing between state driver's license agencies (both governmental and non-governmental) and ICE for immigration enforcement purposes."  The records requested included, but were not limited to:

    i.    DHS and ICE records from January 1, 2009, to the present regarding the criteria, mechanisms, and process for ICE to gain access to or use state driver's license databases or records for immigration enforcement purposes.

    ii.    DHS and ICE records, including but not limited to records concerning the National Law Enforcement Telecommunications System (NLETS), from January 1, 2009, to the present regarding the criteria, mechanisms, and process for DHS and ICE to obtain state driver's license records of individual driver's license applicants or license holders for immigration enforcement purposes.

    iii.    DHS and ICE records from January 1, 2009, to the present regarding any outreach to, agreements (whether formal or informal) with, or communications by DHS and ICE with state driver's license agencies regarding identification of driver's license applicants or driver's license holders for immigration enforcement purposes.

    iv.    DHS and ICE records from January 1, 2009, to the present regarding reporting by employees or agents of state driver's license agencies (both governmental and non-governmental) to DHS and ICE of persons who are applying for or have been issued a driver's license and whom the employees or

agents suspect of lacking federal authorization to be present in the United States.

32.  Expressly excluded from NILC's request were records related to state DMV use of the Systematic Alien Verification of Entitlements system operated by ICE to verify the immigration status of driver's license applicants.[25]

**B.  Request for Expedited Processing**

33.  In addition to making its FOIA request, NILC also requested that each Defendant expedite processing of its request.[26]  Pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II), agencies shall provide expedited processing when there is an "urgency to inform the public concerning [an] actual or alleged Federal Government activity" by organizations "primarily engaged in disseminating information."

34.  Plaintiff NILC is an organization that is "primarily engaged in disseminating information."  See 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also supra* at ¶¶ 10-13.

35.  Expedited processing of this FOIA request is justified as this request implicates a matter of urgent public concern—the federal government's use of state driver's license records and data for immigration enforcement.  The release of the requested information is urgent for several reasons.

36.  First, new driver's license laws that provide U.S. residents with the right to apply for driver's licenses without regard to immigration status were enacted to ensure the safety of drivers, pedestrians, and public roads, in general.[27] California and nine other states, as well as the District of Columbia and Puerto Rico, are part of a growing trend that recognizes the importance to public safety of ensuring that drivers are properly educated and licensed regardless of their

[25] *See* Keaney Decl. at ¶ 6, Exhibit A at p. 3.
[26] *See id.* at p. 6.
[27] *See* Alejo Decl. at ¶ 5; *see also* Gascón Decl. at ¶¶ 8-10.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
LEGAL_US_E # 113033876.6

10

immigration status.  However, as explained in Paragraphs ¶¶ 22-29 *supra*, there is deep mistrust among undocumented residents as to what will be done with such information despite assurances that such information is protected:  undocumented immigrants who may otherwise apply for a driver's license under these new state laws are concerned that information they will supply in their application will be used by the federal government to deport them.  Without proper information as to the government's use or non-use of state driver's license agency data, eligible applicants may be discouraged from applying for their driver's license, and these new laws are unlikely to achieve their intended objectives.  There is, therefore, "an urgency to inform the public."

37.   Because a majority of these state laws have gone into effect in the past year or are expected to go into effect by early 2015 (*e.g.*, California and Connecticut), informed public discussions about the possible use of driver's license records by ICE and DHS need to occur.  The urgency of disclosure of such information is particularly acute in California, where an estimated 1.4 million residents are expected to apply for licenses under the new law beginning January 2, 2015.  The federal government's refusal to disclose the requested information frustrates the purpose of California's and other states' driver's license laws.

38.   Second, in order to properly advise clients and would-be applicants about the risks of applying for driver's licenses under these new laws, attorneys and legal advocates need to understand the relevant policies, procedures, and practices of DHS and ICE with respect to the use of state driver's license information for immigration enforcement.

39.   Third, there has been increasing public interest in ICE's use of state driver's license records for purpose of immigration enforcement.[28]  With ten states,

---

[28] *See, e.g.,* Keaney Decl. at ¶ 20(o), Exhibit Y, Brad Heath, "Immigration Tactics Aimed at Boosting Deportations," USA Today (Feb. 17, 2013); id. at ¶ 20(g), Exhibit Q, Aura Bogado "ICE's Latest Stop for Deportations: The DMV," The

the District of Columbia, and Puerto Rico having passed laws that would make driving privileges available to residents regardless of their status, and federal immigration enforcement at the forefront of the national policy debate regarding immigration policy, the information requested is urgently needed to inform the current dialogue more generally.[29]

## C.   Request for Waiver of Fees

40.    NILC also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  Under that provision, "[d]ocuments shall be furnished without any charge … if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

41.    NILC's request qualifies for a fee waiver under this provision of the FOIA statute.  As discussed *supra* at ¶¶ 10-13, NILC is a nonprofit national legal advocacy organization that engages in policy analysis, education, advocacy, and

---

Nation (Feb. 15, 2013); *id*. at ¶ 20(p), Exhibit Z, Richard Winton, Hector Becerra & Kate Mather, "Driver's Licenses for Undocumented Immigrants Stir Debate," Los Angeles Times (Sept. 13, 2013); id. at ¶ 20(q), Exhibit AA, Mike Debonis, "Illegal Immigrants Can Soon Apply for D.C. Driver's Licenses," The Washington Post (Apr. 18, 2014); *id*. at ¶ 20(r), Exhibit BB, Kari D'Ottavio, "Deferred Action for Childhood Arrivals: Why Granting Driver's Licenses to DACA Beneficiaries Makes Constitutional and Political Sense," 72 Md. L. Rev. 931 (2013); *id*. at ¶ 20(s), Exhibit CC, Vallerye Masoquera, "Driving While Undocumented: Chapter 524 Allows Undocumented Immigrants to Apply for California Driver's Licenses," 45 McGeorge L. Rev. 617 (2014); *id*. at ¶ 20(t), Exhibit DD, Tung Sing Wong, "Branded to Drive: Obstacle Preemption of North Carolina Driver's Licenses for DACA Grantees," 37 Hamline L. Rev. 81 (2014); *id*. at ¶ 20(u), Exhibit EE, Maria Pabon Lopez, "More Than a License to Drive: State Restrictions on the Use of Driver's Licenses by Noncitizens," 19 S. Ill. U. L.J. 91 (2005).
[29] *Id*. at ¶ 20(v), Exhibit FF, Gilberto Soriano Mendoza, "States Offering Driver's Licenses to Immigrants," National Conference of State Legislatures (April 2014), available at http://ncsl.org/documents/immig/DL_Enacted_TableApril2014.pdf.

litigation to promote and advance the rights of low-income immigrants.  NILC intends to synthesize and disseminate the information it obtains from this FOIA request to educate the public about DHS and ICE's policies and procedures regarding access to and use of state driver's license records in immigration enforcement.

42.    NILC has the capacity, intent, and legal expertise to synthesize, analyze, and widely disseminate the requested information to the public.  NILC uses many approaches in disseminating information for the public's benefit, including sharing information with local, regional, and national media through press releases and media interviews, publishing reports and memoranda through the Internet, and emails to individuals and organizations working on immigration issues.  NILC intends to use various media to disseminate information obtained from this request, including its publicly accessible website.

43.    NILC does not have a commercial interest in the records requested—NILC intends to disseminate the information it receives pursuant to this FOIA request to the public at no cost.  *See* 6 C.F.R. § 5.11(k).  The requested information is of great interest to the public at large, but is not available in the public domain.

44.    NILC is routinely granted fee waivers by government agencies and, notably, Defendants DHS and ICE have granted NILC fee waivers for prior FOIA requests (2013-HQFO-00730 and 2013-HQFO-00907).

**D.     Request for Fee Reduction**

45.    NILC also requested a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) in the event that its request for a fee waiver was denied.  *See* Keaney Decl. at ¶ 6, Exhibit A at page 6.  This request also was denied.

46.    Fee reductions are warranted when the "records are not sought for commercial use and the request is made by … a representative of the news media."

5 U.S.C. § 552(a)(4)(A)(ii)(II).  As explained in Paragraphs 10-13, *supra*, NILC is a nonprofit organization and has no commercial interest in the information sought by the FOIA request.  Further, NILC is considered "a representative of the news media" for purposes of a fee reduction as it often serves as the primary reporter to the public on issues pertaining to immigration enforcement and government policies.[30]

### E.  Defendants' Responses to NILC's Requests

47.  Each Defendant was required to make a determination on a request for expedited processing within ten days of receiving NILC's request, and each was required to ensure "expeditious consideration" of appeals of such determinations. *See* 5 U.S.C. § 552(a)(6)(E)(ii).

48.  Each Defendant was also required to respond in writing within 20 days after receiving NILC's request and notify NILC whether or not the defendant intended to comply with the request, *see* 5 U.S.C. § 552(a)(6)(A), or in "unusual circumstances" could extend the time for making such a determination by up to ten working days.  *See* 5 U.S.C. § 552(a)(6)(B).

### F.  Defendant ICE's Response to NILC's FOIA Request

49.  On April 30, 2014, ICE mailed three separate letters to NILC acknowledging receipt of NILC's FOIA request and denying NILC's requests for a fee waiver, fee reduction, and expedited processing of the FOIA request.  *See*

---

[30] *See, e.g.,* Keaney Decl. at ¶ 17, Exhibit J, collecting: Tanya Broder et al., Inclusive Policies Advance Dramatically in the States: Immigrants' Access to Driver's Licenses, Higher Education, Workers' Rights, and Community Policing (October 2013); Karen Tumlin et al., A Broken System: Confidential Reports Reveal Failure in U.S. Immigration Detention Centers (July 2009); NILC, Release of Customs and Border Protections Report a Good First Step Towards Transparency (May 30, 2014); NILC, Immigrant Families Will Not Be Penalized for Affordable Care Act Glitches (March 27, 2014).

Keaney Decl. at ¶ 7, Exhibit B.  ICE also invoked the statutorily permitted 10-day extension under 5 U.S.C. § 552(a)(6)(B)(i).

50.   By letter dated June 27, 2014, NILC timely appealed ICE's denial of its request for a full waiver of fees or a fee reduction and the denial of NILC's request for expedited processing.  *See* Keaney Decl. at ¶ 10, Exhibit E.  As of the filing of this Complaint, ICE has not responded to NILC's appeal of ICE's denial of its request for fee waiver or fee reduction and expedited processing.

51.   On June 11, 2014, ICE submitted the only substantive response to NILC's FOIA request indicating that "[a] search of the ICE Office of Enforcement and Removal Operations (ERO) and Office of Homeland Security Investigations (HSI) was conducted and no records responsive to [NILC's] request were found." *See* Keaney Decl. at ¶ 9, Exhibit D.

52.   On August 6, 2014, NILC appealed ICE's response that no records responsive to NILC's request were located, and challenged the adequacy of the agency's search.  *See* Keaney Decl. at ¶ 12, Exhibit G.

53.   On September 8, 2014, ICE sent a letter to NILC acknowledging receipt of the August 6, 2014 appeal.  *See* Keaney Decl. at ¶ 13, Exhibit H.  In this letter, ICE conceded that "additional responsive records may be found in locations the agency has not yet searched," and remanded NILC's appeal to "ICE FOIA for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents."  *Id.*

54.   ICE was required to make a determination on NILC's request for documents by October 3, 2014 (within 20 working days of September 8, 2014).  As of the filing of this Complaint, however, ICE has not notified NILC of any further determination on NILC's request.

### G.    Defendant DHS's Response to NILC's FOIA Request

55.    On May 12, 2014, DHS acknowledged receipt of NILC's request, invoked the statutory 10-day extension, and denied expedited processing. *See* Keaney Decl. at ¶ 8, Exhibit C.  DHS conditionally granted, however, NILC's fee waiver request.

56.    On June 27, 2014, NILC appealed DHS's denial of expedited processing and fee waiver request.  *See* Keaney Decl. at ¶ 10, Exhibit E.

57.    By invoking the statutory 10-day extension, DHS's response to NILC's FOIA request became due within 30 working days, or June 5, 2014.

58.    DHS did not respond within the statutory time limit.  Pursuant to 5 U.S.C. § 552(a)(6)(A), the failure of an agency to respond to a FOIA request within the statutory time limit may be deemed a constructive denial of the request.

59.    On October 13, 2014, NILC sent a letter to DHS via UPS Next Day Air, appealing the constructive denial of its FOIA request.  *See* Keaney Decl. at ¶ 14, Exhibit I.

60.    Although a written response to NILC's October 13, 2014 appeal letter was due on November 10, 2014 (20 working days after the appeal letter was received), *see* 5 U.S.C. § 552(a)(6)(A)(ii), DHS has not responded to NILC's appeal.

### COUNT ONE

**(Violation of the Freedom of Information Act for
Denial of FOIA Request) (DHS and ICE)**

61.    NILC repeats each allegation in Paragraphs 1 - 60, as if fully set forth herein.

62.    On April 24, 2014, NILC made a request under FOIA to Defendants DHS and ICE for responsive records related to information sharing between state driver's license agencies and DHS or ICE for immigration enforcement purposes.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

63.     DHS and ICE were each obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to NILC's requests and to issue a determination concerning NILC's request within the time period set forth in 5 U.S.C § 552(a)(6)—20 working days, to be extended by no more than 10 working days in the event that the agency finds the existence of "unusual circumstances."

64.     Defendants failed to conduct a reasonable search within the statutory time period for records responsive to NILC's request.  And there exists no legal basis justifying Defendants' failure to search for these records within the statutory time period.

65.     By failing to conduct a reasonable search for records responsive to NILC's FOIA request and to disclose responsive records, Defendants violated 5 U.S.C. §§ 552(a)(3)(A), (a)(3)(C), and (a)(6)(A), as well as the regulations promulgated thereunder.

66.     The Defendants' failure to make a determination concerning NILC's request for documents within the statutory time period constitutes a constructive denial of NILC's request, and NILC is deemed to have exhausted its administrative remedies with respect to each Defendant.  See 5 U.S.C. § 552(a)(6)(C)(i).

67.     The interests of NILC and of the public in the requested records, as detailed above in Paragraphs 16-29 and 35-39, are irreparably harmed by Defendants' failure to search for and disclose responsive records.  That harm outweighs any burden placed on Defendants.

## COUNT TWO

**(Violation of the Freedom of Information Act for
Denial of NILC's Request for Expedited Processing)
(DHS and ICE)**

68.     NILC repeats each allegation in Paragraphs 1 - 67 as if fully set forth herein.

69.     In letters dated May 12, 2014, and June 11, 2014, Defendants DHS

LEGAL_US_E # 113033876.6

1    and ICE, respectively, denied NILC's request for expedited processing.

2        70.    NILC has administratively appealed DHS's and ICE's respective

3    denials of its request for expedited processing and has, therefore, exhausted its

4    administrative remedies.

5        71.    As discussed in Paragraphs 33-39 above, NILC is entitled to expedited

6    processing because NILC is an organization that is "primarily engaged in

7    disseminating information" and there is an "urgency to inform the public

8    concerning [an] actual or alleged Federal Government activity." 5 U.S.C. §

9    552(a)(6)(E)(v)(II).

10       72.    Defendants DHS's and ICE's respective denials of NILC's request for

11   expedited processing violates 5 U.S.C. § 552(a)(6)(E).

12       73.    NILC's and the public's interests in the expeditious processing of the

13   requested records are irreparably harmed by the Defendants' denial of expedited

14   processing.  That harm outweighs any burden placed on the Defendants in

15   expeditiously processing NILC's request.

16                              **COUNT THREE**

17
                    **(Violation of the Freedom of Information Act for**
18            **Denial of NILC's Request for Fee Waiver or Fee Reduction)**
                               **(Defendant ICE)**
19

20       74.    NILC repeats each allegation in Paragraphs 1 - 73 above as if fully set

21   forth herein.

22       75.    NILC is entitled to a fee waiver.  As discussed in Paragraphs 40 - 44

23   above, "disclosure of the information is in the public interest because it is likely to

24   contribute significantly to public understanding of the operations or activities of the

25   government and is not primarily in the commercial interest of the requester." 5

26   U.S.C. § 552(a)(4)(A)(iii).  Moreover, Defendants have previously granted NILC

27   fee waivers.  *See supra* at Paragraph 44.

28

76.    At a minimum, NILC is entitled to a fee reduction as the "records are not sought for commercial use and the request is made by . . . a representative of the news media." 5 U.S.C. § 552(a)(4)(ii)(II).  NILC is considered "a representative of the news media" for purposes of a fee reduction under this statute.

77.    Defendant ICE's denial of NILC's request for a fee waiver or fee reduction violates 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(ii)(II).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NILC respectfully requests that this Court enter judgment in its favor:

i.    Declaring that Defendants' failure to conduct a reasonable and timely search for records responsive to the FOIA request and their refusal to disclose such records violate FOIA;

ii.    Declaring that the Defendants' denial of expedited processing of NILC's FOIA request violates the FOIA statute;

iii.    Declaring that Defendant ICE's denial of a fee waiver or fee reduction violates the FOIA statute;

iv.    Ordering the Defendants to conduct a reasonable search for records responsive to NILC's FOIA request on an expedited processing schedule and to produce such records to NILC;

v.    Enjoining the Defendants from withholding records responsive to the FOIA request and ordering them to promptly produce the same;

vi.    Ordering Defendant ICE to grant NILC an unconditional public interest fee waiver;

vii.    Awarding NILC reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(A)(4)(E) and 28 U.S.C. § 2412; and

viii.    Granting all other such relief to NILC as the Court deems just and proper.

1

DATED:  December 17, 2014

2

ANDREW B. GROSSMAN
COURTNEY L. TURCO
PAUL HASTINGS LLP

3

4

5

Andrew B. Grossman

6

7

Attorneys for Plaintiff
NATIONAL IMMIGRATION LAW
CENTER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

LEGAL_US_E # 113033876.6

20